UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
File No.: 5:21-CT-03129-BO

| | |
|---|---|
| JONATHAN JAMES NEWELL,<br>Plaintiff,<br><br>v.<br><br>JA'BARRI DAVIS, *et al.*,<br>Defendants. | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

NOW COME Defendants Davis, Downy, Singleton, and Harris (collectively, hereinafter "Defendants"), by and through Undersigned Counsel, and submits this Memorandum in Support of Defendants' Motion for Summary Judgment. In summary, Plaintiff's Amended Complaint is far from a model of clarity. It seems that he is primarily alleging claims of retaliation, excessive force, due process violations, and other claims resulting from an April 2021 incident. As shown below, Plaintiff failed to exhaust his administrative remedies regarding those claims. However, even if the Court were to consider the merits of those claims, Plaintiff's claims fail to satisfy the elements of each claim. Therefore, Defendants should be granted summary judgment.

## I.      STATEMENT OF CASE

On May 12, 2021, Plaintiff (along with two other inmates as plaintiffs) filed their Complaint. DE-1. The Court dismissed the other two inmates. DE-19. Plaintiff then

1

filed a Motion to Amend. DE-20. The Court granted Plaintiff's Motion to Amend. DE-24.

On November 24, 2021, Plaintiff filed his Amended Complaint. DE-25. Plaintiff's Amended Complaint appears to assert the following claims:

|  | **Downy** | **Davis** | **Singleton** |
|---|---|---|---|
| Supervisory Liability | X | | |
| Due Process (Disciplinary) | X | X | X |
| Med. Deliberate Indifference | | X | |
| Retaliation | X | X | X |
| Excessive Force | | X | X |
| Discarding Grievance | X | X | |

DE-25; *see also* DE-57[1]. Unit Manager Kimberly Harris is not named as a defendant in the Amended Complaint, but another DAC employee (DHO T. Harris) is named instead; however, that employee has not been served in this case. *Compare* DE-1 at 4 *with* DE-25 at 4. Even if UM Harris were included, Plaintiff only claims that she was liable due to her staff's "harassment" and UM Harris denies those allegations. DE-57 at ¶ 17; *see also* Declaration of Harris at ¶ 3 (attached to Appendix as **Exhibit 5**).

On December 9, 2021, the Court entered its frivolity order allowing Plaintiff's claims to proceed against Defendants Davis, Downy, Singleton, and Harris. DE-26.

On April 20, 2022, Defendants filed their Answer. DE-39.

---

[1] Plaintiff lists a variety of other claims, but Undersigned Counsel does not believe that the Complaint contains facts that would support these other claims. *See* DE-25 at 5. To the extent that the Court believes that the Amended Complaint asserts other claims not addressed herein, Defendants would like the opportunity to address any additional claims.

The Court denied without prejudice two prior motions for summary judgment filed by Defendants.  DE-47; DE-59.

The Court referred this matter to a court-hosted settlement conference.  DE-59.  On December 5, 2023, Magistrate Judge Numbers presided over a court-hosted settlement conference that resulted in an impasse.  DE-66.

On March 6, 2024, James Trachtman filed a Notice of Substitution for Bryan Nichols, representing Defendants.  DE-73.  Contemporaneous herewith, Undersigned Counsel has filed a Notice of Substitution for James Trachtman.

Discovery has closed and this matter is ripe for dispositive motions.

## II.  STATEMENT OF FACTS

On or about October 29, 2008, Plaintiff was convicted of First Degree Murder, and sentenced to life imprisonment.  *See* Declaration of Counsel at Ex. A (attached to Appendix as **Exhibit 1**).  Since his incarceration, Plaintiff has incurred 39 disciplinary infractions.  *Id.* at Ex. B (Disciplinary History).  At all relevant times, Plaintiff was housed at Warren Correctional Institution (hereinafter "Warren CI").  DE-25 at 5.

In May 2016, Plaintiff injured his left hand by allegedly smashing it between a cart and the wall while in the dining hall.  **Exhibit 1** at Ex. F (May 2016 Incident Report).  Then, on February 1, 2021 (well before this incident), Plaintiff submitted a sick call request complaining that "my knuckles and fingers have some lacerations and are bleeding on my left hand and right hand is starting to do the same."  **Exhibit 1** at Ex. C (Relevant

Medical Records).  Plaintiff did not attribute the injury to any use of force by staff; to the contrary, his reference to the "right hand starting to do the same" infers that Plaintiff believed there was a medical cause for the condition.

On April 10, 2021, Officer Mayo (not a defendant in this case), closed a window in the Granville Unit at Warren CI because inmates were yelling at the groundskeepers about contraband, but there were several other windows still open and also fans running inside the unit.  *Id.* at Ex. D (Disciplinary Report).  Plaintiff felt that was a "violation of executive orders" regarding COVID protocols and approached the door to speak to staff. *Id.*  Plaintiff began yelling and demanding that staff open the windows in the block.  *Id.*; *see also* Declaration of Singleton at ¶ 3 (attached to Appendix as **Exhibit 2**).  During the conversation with Officer Singleton, Plaintiff admits that his mask "slipped below his nose." *Id.*  After talking with Officer Singleton about the windows, Plaintiff punched the door window in frustration.  *Id.*  The punch was loud enough to bring Sgt. Downy out of her office to see what happened.  *Id.*; *see also* Declaration of Downy at ¶ 3 (attached to Appendix as **Exhibit 3**).  After she learned that Plaintiff had punched the window, she approached Plaintiff to determine what was going on.  *Id.*  During the conversation, Plaintiff never mentioned anything about his hand and never requested any medical attention. *Id.*

Plaintiff claims that, after speaking with Officer Singleton, that Officer Davis opened the door and then slammed it on his fingers.  DE-25 at 7.  Officer Davis denies

4

that he slammed a door on Plaintiff's hand. *See* Declaration of Davis at ¶ 4 (attached to Appendix as **Exhibit 4**).

For his behavior, Plaintiff was charged with disciplinary infractions for B3 (Lock Tampering), B25 (Disobey Order), and B99 (Attempted Class B Offense). **Exhibit 1** at Ex. D (Disciplinary Report). He was convicted of the B3 and B25 infractions, and the B99 was dismissed since Plaintiff "actually hit the window. It was not an attempt." *Id.*

On April 27, 2021, Plaintiff was evaluated by his psychiatrist, Dr. Thompson, and there was no mention of any uses of force by staff or injuries to his hand. **Exhibit 1** at Ex. C (Relevant Medical Records). Similarly, on May 21, 2021, Plaintiff met with his psychologist, Dr. Hodges, and similarly did not mention any uses of force or injuries. *Id.* On June 16, 2021, Plaintiff was seen by Dr. Curtis for his diabetes, but again, nothing was mentioned about a use of force or injury. *Id.* On July 20, 2021, Plaintiff was again seen by Dr. Thompson, but again, nothing was mentioned about a use of force or injury. *Id.* On August 5, 2021, Plaintiff was seen by a nurse for medication refills and cancer screen, but again, nothing was mentioned a use of force or injury. *Id.* On August 12, 2021, Plaintiff was again evaluated by Dr. Curtis, and again, Plaintiff did not complain about a use of force or injury. *Id.* On September 16, 2021, Plaintiff was seen by a nurse after returning from a medical trip, and he did not complain about a use of force or injury. *Id.* On October 15, 2021, Plaintiff was seen by a nurse after returning from a medical trip, and he did not complain about a use of force or injury. *Id.*

### III. STANDARD OF REVIEW

Courts should grant summary judgment where "there is no genuine disputed as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The party moving for summary judgment has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thereafter, the burden shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324. Instead, the nonmoving party must "identify *affirmative evidence* from which a jury could find that the plaintiff has carried his or her burden of proving

the pertinent motive." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (emphasis added).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Celotex Corp.*, 477 U.S. at 323. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industr'l Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). Courts have an affirmative duty to prevent factually unsupported claims from proceeding to trial. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

## IV.  <u>LEGAL ARGUMENT</u>

### A.  PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES

The PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). The Supreme Court held that the PLRA required a prisoner to exhaust all administrative remedies available as a *precondition* to filing suit in federal court even if the relief sought could not be granted by the administrative process. *Booth v. Churner*, 532 U.S. 731, 741 (2001) (emphasis added). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

7

Proper exhaustion is determined by reference to institutional rules, and a prisoner is required to "complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citations and quotation marks omitted). The Fourth Circuit has recognized that NCDPS has established, in its Administrative Remedy Procedure ("ARP"), a three-step procedure which governs submission and review of inmate grievances. *Moore v. Bennette*, 517 F.3d 717, 721 (4th Cir. 2008).

To satisfy the exhaustion requirement, grievances must include enough information to "alert the prison to the nature of the wrong for which redress is sought." *Wilcox v. Brown*, 877 F.3d 161, 167 n.4 (4th Cir. 2017); *see also Moore*, 517 F.3d at 729 (finding that grievance must give prison officials "a fair opportunity to address the problem that [eventually] form[ed] the basis of the lawsuit"); *Davidson v. Davis*, 2015 WL 2696573 at *12 (W.D.N.C. March 5, 2015) (noting that while an inmate is not required to name each defendant, he is required to put "prison officials on fair notice that Plaintiff was complaining about…conduct related to a specific officer.").

This District has routinely found that inmate grievances seeking relief for one thing do not satisfy the exhaustion requirement when their lawsuit seeks something different – some cases involving the same incident. *See, e.g., Hallinan v. Scarantino*, 2022 WL 945590 at *9 (E.D.N.C. March 29, 2022) (grievance seeking home confinement in

response to COVID-19 did not exhaust remedies for medical deliberate indifference claim for COVID-19 policies and practices); *Washington v. Anderson*, 2010 WL 3075489 at *2 (E.D.N.C. Aug. 5, 2010) (multiple grievances loss of job, loss of legal books, placement in segregation, faulty cell vent, and alleged retaliation did not exhaust remedies for a conditions of confinement claim); *Deal v. Central Prison Hosp.*, 2011 WL 322403 at *3 (E.D.N.C. Jan. 27, 2011) (multiple grievances failed to mention anything about the administration of IV antibiotics resulting in dismissal for failure to exhaust); *Esquivel v. Hines*, 2011 WL 221706 at *2 (E.D.N.C. Jan. 21, 2011) (two grievances regarding spinal injury, MRI, and neurology appointment did not exhaust remedies for deliberate indifference claim for proper medication); *McClary v. Bradley*, 2019 WL 4439474 at *2 (E.D.N.C. Sept. 16, 2019) (grievance for sexual harassment did not exhaust remedies for sexual assault claim); *Tunstall-Bey v. Smith*, 2019 WL 1442196 at *6 (E.D.N.C. March 29, 2019) (grievance about medical co-payments did not exhaust remedies for inadequate medical care of leg injury);

Other courts within the Fourth Circuit have ruled similarly. *Davidson v. Davis*, 2015 WL 996629 at *4 (W.D.N.C. March 6, 2015) (grievance that inmate was assaulted by correctional staff did not exhaust remedies for supervisory liability claim against warden for same use of force incident); *Todd v. White*, 2019 WL 109394 at *7 (W.D.N.C. Jan. 3, 2019) (grievance about two identified officers conduct did not exhaust remedies for similar conduct by other others); *Hicks v. Sadie*, 2022 WL 2952507 at *18 (M.D.N.C. July 26, 2022)

(grievance about lack of clothing did not exhaust remedies for conditions of confinement claim related to mattress or hygiene products); *Johnson v. Smith*, 2023 WL 1353668 at *16 (M.D.N.C. Jan. 31, 2023) (grievance related to use of force incident did not exhaust remedies for medical deliberate indifference claim related to injuries for same use force incident); *Banks v. Fowlkes*, 2014 WL 6633551 at *4 (E.D. Va. Nov. 20, 2014) (grievance wanting to know who wrote a statement that inmate assaulted staff in reference to a use of force event did not exhaust remedies for excessive force claim related to same use of force event); *Williams v. Maryland*, 2011 WL 3422825 at *7-8 (D. Md. Aug. 3, 2011) (grievance alleging that inmate was assaulted by staff did not exhaust remedies for medical deliberate indifference claim related to same incident or due process claim for false accusations related to same incident).

  1. <u>Plaintiff Was Aware of His Exhaustion Requirement</u>

  The ARP is part of inmate orientation and is explained orally to each inmate. *See* ARP at § .0302(a)(1). Prior to the April 2021 incident, Plaintiff had fully exhausted more than 30 grievances. *See* **Exhibit 1** at Ex. I. Therefore, Plaintiff cannot reasonably claim that he was unaware of the ARP or that it was unavailable to him.

  2. <u>Plaintiff Did Not Exhaust His Administrative Remedies</u>

  From April 8, 2021 (before the incident) to November 17, 2021 (after Plaintiff filed his initial Complaint), Plaintiff only exhausted two administrative remedies and neither of which relate to excessive force, due process, retaliation, or the other claims raised in

Plaintiff's Amended Complaint. **Exhibit 1** at Ex. G (IGRB Memo dated November 17, 2021); Ex. H (Grievance 4290-2021-GRAC-15448); Ex. J (Grievance 4290-2021-GRAC-15153). Furthermore, given that the incident occurred in April 2021 and Plaintiff filed the initial lawsuit in May 2021, it would have been impossible for Plaintiff to have exhausted his administrative remedies. Therefore, the Court should dismiss all claims due to Plaintiff's blatant failure to exhaust his administrative remedies.

**B. PLAINTIFF'S OFFICIAL CAPACITY CLAIMS MUST BE DISMISSED**

Plaintiff's claims against Defendants in their official capacity should be dismissed because the Eleventh Amendment bars such claims unless the state was waived its immunity, and the State of North Carolina has not done so. Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivation of civil liberties." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment "bars such suits unless the State has waived its immunity…or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Id.*

The Eleventh Amendment is also applicable to state officers sued in their official capacity. *See Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459 (1945). "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71; *see also Green v.*

11

*Kearney*, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010) ("Actions against officer of the State in their official capacities are actions against the State for purposes of apply the doctrine of sovereign immunity). "State officials acting in their official capacity are therefore not 'persons' for the purposes of § 1983, and are not proper defendants to a § 1983 lawsuit." *Diggs v. Balogun*, 2017 WL 4921690, at *4 (D. Md. Oct. 31, 2017) (citing *Will*, 491 U.S. at 71).

In this case, Plaintiff's Complaint alleges claims against Defendants in both their individual capacity and official capacity. *See* DE-1 at 3-4. However, as discussed above, Plaintiff cannot legally allege claims against Defendants in their official capacity because Defendants are not "persons," but instead, an extension of the State of North Carolina, who has not waived immunity. Therefore, Defendants are entitled to summary judgment for all official capacity claims.

## C. DEFENDANT HARRIS IS ENTITLED TO SUMMARY JUDGMENT

Generally, "an amended pleading supersedes the original pleading, rendering the original pleading of no effect." *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001). "Thus, if an amended complaints omits claims raised or defendants included in the original complaint, the plaintiff waives those omitted claims." *El v. Charlotte-Mecklenburg Police Dept.*, 2016 WL 1441275 at *1 (W.D.N.C. April 12, 2016) (citing *Young*, 238 F.3d at 573).

12

In this case, Plaintiff originally named Unit Manager Kimberly Harris in his Complaint, but then named Disciplinary Hearing Officer T. Harris[2] (different person) in his Amended Complaint. *Compare* DE-1 *with* DE-25. Therefore, Plaintiff has waived his claims against Unit Manager Harris.

Even if the claims were not waived against Unit Manager Harris, Plaintiff only claimed that she was liable because her staff "harassed" inmates. However, the Fourth Circuit has held that "[v]erbal harassment or abuse by prison officials in itself does not state a constitutional deprivation under section 1983." *Johnson v. Laham*, 9 F.3d 1543 (4th Cir. 1993) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)). Additionally, claims based on *respondeat superior* are barred under Section 1983. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996). Therefore, even considering Plaintiff's claims on the merits, they still fail.

Lastly, any claims against DHO Harris would be barred by *Heck* because Plaintiff has not alleged or proven that his disciplinary conviction was overturned. *See Heck v. Humphrey*, 512 U.S. 477 (1994); *Edwards v. Balisok*, 520 U.S. 641 (1997) (applying *Heck* to prison disciplinary infractions).

---

[2] Plaintiff has not served DHO Harris and timeline to do so under Rule 4(m) has expired.

**D.      DEFENDANTS DID NOT VIOLATE PLAINTIFF'S DUE PROCESS RIGHTS**

1.      <u>Heck Bars Plaintiff's Due Process Claims</u>

Generally, "a state prisoner's § 1983 action is barred…*if* success in that action necessarily demonstrate the invalidity of [that prisoner's] confinement or its duration," unless the prisoner proves that the challenged criminal or disciplinary conviction has been terminated in his favor.  *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (interpreting *Heck*).  *Heck* applies to "convictions" entered in prison disciplinary proceedings.  *See Edwards*, 520 U.S. 641.

This District and others within the Fourth Circuit have used the *Heck* bar to dismiss 1983 actions based on prison disciplinary infractions, mostly in the area of First Amendment retaliation claims based on disciplinary infractions.  *Id.*; *LeMaitre v. Grindstaff*, 2020 WL 5637660 at *3 n. 2 (W.D.N.C. Sept. 21, 2020); *Smith v. NCDPS*, 2019 WL 3798457 at *3 (M.D.N.C. Aug. 13, 2019); *Alexander v. Parks*, 2019 WL 346425 at *8 n. 18 (W.D. Va. Jan. 28, 2019); *Sturkey v. Ozmint*, 2010 WL 4923111 at *4 (D.S.C. Nov. 29, 2010).

In this case, for Plaintiff to succeed on his due process claims, he would need to prove that his disciplinary conviction was procedurally flawed, which would necessarily demonstrate the invalidity of his conviction.  Before Plaintiff could bring such a due process claim, he would need for his disciplinary convictions to be overturned in some way.  However, as shown herein, his convictions have not been overturned.  Therefore, Plaintiff's due process claims should be dismissed

2.    Plaintiff's Due Process Claims Fail on the Merits

In due process cases, a court "first asks whether there exists a liberty or property interest which has been interfered with by the State." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). If so, the court then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.*

Generally, prisoners are only entitled to procedural due process protections for prison disciplinary proceedings that impose a punishment that either alters "the duration of [an inmate's] sentence," or "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). "Due process in a prison disciplinary proceeding 'requires only that there be some evidence to support the findings made in the disciplinary hearing.'" *Meeks v. Langley*, 2007 WL 5685082 at *2 (E.D.N.C. Oct. 4, 2007) (quoting *Superintendent, Mass Corr. Inst. v. Hill*, 472 U.S. 445, 457 (1985)). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.*

To the extent that Plaintiff complains that his disciplinary convictions resulted in extra duty and/or assignment to restrictive housing for disciplinary purposes ("RHDP"), courts have ruled that such punishments do not implicate an inmate's liberty interests. *See, e.g., Wright v. Lassiter*, 2020 WL 4734413 at *8 (W.D.N.C. Aug. 14, 2020).

Even if the Court were to find that Plaintiff's liberty interests were implicated by the disciplinary infractions, Plaintiff was given sufficient due process. Specifically, "If an

15

inmate's liberty interest is implicated, due process requires that he receive '(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.'" *McNeill v. Britt*, 2021 WL 3711702 at *12 (M.D.N.C. July 21, 2021) (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)). In this case, the disciplinary reports show that Plaintiff received advanced written notice, an opportunity to be heard, and a written statement by the factfinder. Therefore, Plaintiff's due process claims also fail on the merits.

E. **DEFENDANTS WERE NOT DELIBERATELY INDIFFERENT TO PLAINTIFF'S MEDICAL NEEDS**

Under the Eighth Amendment, deliberate indifference to a serious medical need requires proof that (1) the prisoner was suffering from an objectively serious medical need and (2) the prison staff were subjectively aware of the need for medical attention but failed to either provide it or ensure the needed care was provided. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Where a deliberate indifference claim is predicated on a delay in medical care, [the Fourth Circuit has] ruled that there is no Eighth Amendment violation unless 'the delay *results* in some substantial harm to the patient' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica v. Aylor*, 739 Fed. Appx. 745, 755 (4th Cir. 2018). As shown below, Plaintiff cannot satisfy any of these requirements.

16

1.      Plaintiff's Allegations Are Contradicted by the Record

While Plaintiff claims that his hand was injured during the incident with Defendants, Plaintiff had multiple opportunities to complain about it to medical professionals, but he failed to do so. Furthermore, Plaintiff submitted a sick call weeks before the incident with Defendants, wherein he was complaining about his hands and attributing it to a medical cause (not trauma cause). Thus, it is highly doubtful that Plaintiff's hand was ever injured as a result of any use of force. But even assuming his hand was injured, Defendants are still entitled to summary judgment as discussed below.

2.      Plaintiff Did Not Have an Objectively Serious Medical Need

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Furthermore, Districts within the Fourth Circuit (including the Eastern District) have adopted the Second Circuit's standard stating that a "condition is sufficiently serious to merit constitutional protection if it is a condition of urgency, one that may produce death, degeneration, or extreme pain." *See Badu v. Broadwell*, 2014 WL 12495277 at *6 n. 8 (E.D.N.C. Aug. 18, 2014) (quoting *Shydiq v. Harler*, 2012 WL 488264 at *5 (E.D. Va. Feb. 13, 2012) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994))); *Banks v. Broadwater*, 2011 WL 3164367 at *4 (D. Md. July 26, 2011); *Burns v. Medical Staff at Manning Corr. Inst.*, 2007 WL 4292781 at *3-4 (D.S.C. Dec. 5, 2007).

17

In this case, Plaintiff has failed to show that he had any hand injury, much less one that required medical treatment. To the contrary, there are no medical records in the months after the incident showing any kind of hand injury, even though Plaintiff had multiple opportunities to have reported one. Therefore, any alleged injury suffered by Plaintiff was not sufficiently serious to merit constitutional protection.

3.    Defendants Did Not Act with Deliberate Indifference

Generally "deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302, (4th Cir. 2004) (quoting *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)). Regarding prisoners complaints about medical care, the Supreme Court held that "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Fourth Circuit has made it clear that correctional staff are entitled to rely on the advice of medical staff. *Iko*, 535 F.3d at 242 (citing *Spruill v. Gills*, 372 F.3d 218 (3d Cir. 2004)). And lastly, the NCDPS policies applicable at that time prohibited correctional staff from medically triaging or treating inmates; instead, clinical medical issues are "the sole province of licensed health care providers." *See* **Exhibit 1** at Ex. E, Section .0207 (Medical Policy).

In this case, Plaintiff never reported any kind of injury to Defendants, or even medical professionals. However, even if he had reported it, Defendants were not responsible for medically treating him. Instead, Defendants were entitled to rely upon

18

the medical professional who were treating Plaintiff in the months after his alleged injury. Therefore, Plaintiff cannot show that Defendants were deliberately indifferent to his medical needs.

    4.    <u>Delay in Plaintiff's Treatment Did Not Cause Substantial Harm</u>

As stated above, to be actionable, any alleged delay in treatment must result "'in some substantial harm to the patient' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica*, 739 Fed. Appx. at 755. Other Circuits have required that a plaintiff alleging deliberate indifference based on delayed treatment "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994); *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001); *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208-209 (1st Cir. 1990).

Generally, proximate cause is an issue of fact for the jury. *See Olds v. U.S.*, 2012 WL 1130604 at *2 (4th Cir. April 5, 2012). However, "[i]n cases involving 'complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of an injury.'" *Phillip v. GEO Grp., Inc.*, 2012 WL 5392120 at *6 (E.D.N.C. Nov. 5, 2012), *aff'd*, 520 Fed. Appx. 215 (4th Cir. 2013); *Edwards v. Graham Cnty. Jail*, 2017 WL 5894496 at *6 (W.D.N.C. Nov. 29, 2017). "[W]hen an injury lacks an obvious origin and multiple causes are possible, expert

19

medical testimony is necessary to prove causation." *Zartner v. Miller*, 760 Fed. Appx. 558, 563-64 (10th Cir. 2019); *see also ALberson v. Norris*, 458 F.3d 762, 765-66 (8th Cir. 2006); *Miller v. Mandrin Homes, Ltd.*, 305 Fed. Appx. 976, 980 (4th Cir. 2009) ("The Millers also produced no evidence of medical causation…In short, the Millers have suggested only possibility, rather than probability, on an essential element to their claims. The district court properly granted summary judgment."). "Even medical causation that appears intuitively obvious may require expert testimony. *Bistrian v. Levi*, 2020 WL 6951048 at n. 157 (E.D. Pa. Aug. 21, 2020).

In this case, Plaintiff cannot prove that the delay in any treatment of his alleged injuries caused him substantial harm because he does not have an expert witness. Specifically, Undersigned Counsel is unaware of any expert report submitted by Plaintiff, and Plaintiff would need such an expert to testify that the delay caused him substantial harm. This is especially true considering that Plaintiff saw various different medical professionals in the months after the incident, and never reported it. Therefore, the Court should dismiss Plaintiff's deliberate indifference claims.

## F. DEFENDANTS DID NOT RETALIATE AGAINST PLAINTIFF

"[N]ot every reaction made in response to an individual's exercise of his First Amendment right to free speech is actionable retaliation." *Suarez Corp. Indust. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Inmate claims of retaliation are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the

sense that it responds to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

For an inmate to prove a First Amendment retaliation claim, he must prove "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)) (cleaned up). As shown below, Plaintiff cannot satisfy the second and third elements.

1.   Defendants' Actions Did Not Affect Plaintiff's First Amendment Activity

For the second element, the Fourth Circuit requires that "the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected [act]." *Suarez Corp. Indust.*, 202 F.3d at 686; *see also ACLU of Md.*, 999 F.2d 780 at 785. This means that there must be "sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access the courts and show that he suffered more than de minimis inconvenience." *McFadden v. Lewis*, 517 Fed. Appx. 149 (4th Cir. 2013) (citing *ACLU of Md.*, 999 F.2d at 785-86 n. 6). Thus, in addition to considering whether protected speech was actually curtailed, courts are "required to also evaluate whether [the defendant's] actions 'would likely deter a person of ordinary firmness from the exercise of First Amendment rights.' This objective inquiry examines

21

the specific facts of each case, taking into the account the actors involved and their relationship." *Booker v. S.C. Dept. of Corrections*, 583 Fed. Appx. 43, 44 (4th Cir. 2014) (quoting *Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006)).

It should be undisputed that Plaintiff continued to file grievances after the April 2021 incident. For example, on May 5, 2021, Plaintiff filed and fully exhausted a grievance about cancer treatment. **Exhibit 1** at Ex. H. Furthermore, the fact that Plaintiff filed this federal lawsuit, two more in this District, and one more in the Middle District shows that Defendants' alleged actions did not affect Plaintiff's ability to exercise his First Amendment rights. *See Newell v. Stein*, No. 5:21-ct-03226-D (E.D.N.C. July 30, 2021); *Newell v. Newby*, No. 5:22-ct-03091-D (E.D.N.C. March 8, 2022); *Newell v. Nash Corr. Inst.*, No. 1:22-cv-00089-LCB (M.D.N.C. Jan. 31, 2022). Simply put, Defendants' actions did not affect Plaintiff's ability to exercise his First Amendment rights, and would not have affected that of a person of ordinary firmness.

2. <u>There is No Causal Connection Between Plaintiff's Protected Activity and Defendants' Actions</u>

For the third element, to show a causal connection, an inmate must prove:

[A]t the very least, that the defendant was aware of her engaging in protected activity. Knowledge alone, however, does not establish a causal connection between the protected activity and the adverse action. There must also be some degree of temporal proximity to suggest a causal connection. A lengthy time lapse between the public official's becoming aware of the protected activity and the alleged adverse action…negates any inference that a causal connection exists between the two.

*Constantine*, 411 F.3d at 501 (internal citations and quotations omitted). "Temporal proximity" between the inmate's protected activity and the allegedly retaliatory action "is simply too slender a reed on which to rest" the causation element of a retaliation claim. *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993).

In this case, it unclear what Plaintiff claims to be his alleged protected activity. However, none of Plaintiff's grievances appear to be about Defendants. Therefore, the grievances would not be causally connected. Even if Plaintiff were to allege that his verbal complaints to Officer Singleton about the windows were sufficient to satisfy the protected activity element, that does not explain why Officer Davis was the one who allegedly slammed his hand in the door or why any of the other Defendants allegedly mistreated Plaintiff. At best, Plaintiff would hope to show that the disciplinary charges filed by Officer Singleton would be retaliatory, but Plaintiff still cannot clear the *Heck* bar. Therefore, Plaintiff cannot show that any allegedly protected activity caused Defendants' allegedly retaliatory actions.

## G.   DEFENDANTS DID NOT USE EXCESSIVE FORCE AGAINST PLAINTIFF

Plaintiff's claim that Defendant Davis slammed Plaintiff's hand in the door while Defendant Singleton stood by watching is blatantly contradicted by the record. "An excessive force claim requires a plaintiff to prove (1) that force was applied 'maliciously and sadistically for the very purpose of causing harm' and (2) that he suffered more than de minimis pain or injury." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting

*Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). As such, there is both a subjective element regarding Defendants' intent and an objective element regarding Plaintiff's alleged injury.

      1.    <u>No Evidence of Malicious or Sadistic Intent</u>

Regarding the subjective component, the Supreme Court identified the following factors that the Court is required to consider: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the threat…reasonably perceived by the responsible official"; and (4) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321. In considering these factors, the Court must determine "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001). Therefore, the Court is required to consider the reasonableness of the officer's conduct not with 20/20 hindsight but from the perspective of a reasonable officer on the scene." *Id.*

In addition to the above factors, the Supreme Court noted the following:

> In making and carrying out decision involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison staff, in addition to the possible harms to inmates against whom force might be used.

*Whitley*, 475 U.S. at 320. The Supreme Court went on to state that "prison administrators…should be accorded wide-ranging deference in the adoption and

execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Id.* at 321-322. And lastly, it stated that "[u]nless it appears that the evidence viewed in the light most favorable to the plaintiff will support a reliable inference of wantonness in the infliction of pain, under the standard we have described, the case should not go to the jury." *Id.* at 322.

In this case, Plaintiff cannot prove that his hand was actually slammed in the door. However, even if he could prove that occurred (which it did not), Plaintiff cannot show that Defendant Davis intentionally slammed his hand in the door (as opposed to negligently). Therefore, Plaintiff cannot prove the subjective element.

2.      No Evidence of Sufficient Force

Regarding the objective element, the Supreme Court has held that "not every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010). Specifically, a prisoner's rights under the Eighth Amendment does not include "*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.*

In this case, Plaintiff cannot show that the contact that Plaintiff's hand had with the door was anything more than *de minimis* force. That is evidenced by Plaintiff's failure

to seek medical care for his hand. Therefore, the Court should find that the alleged (but denied) amount of force was not sufficient to satisfy the objective element.

3. No Bystander Liability

For bystander liability, a plaintiff must show that the officer is (1) "confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act." *Randall v. Prince George's County*, 302 F.3d 188, 203 (4th Cir. 2002). However, the officer must have a "realistic opportunity to intervene and prevent the harm from occurring." *Id.* at 204.

Without the underlying claim, Plaintiff does not have a claim for bystander liability against Defendant Singleton. Even considering the bystander claim on the merits, Plaintiff admits that Defendant Downy was not present for the alleged use of force. Furthermore, Plaintiff has not alleged or proven that Defendant Singleton knew that Defendant Davis was going to slam Plaintiff's hand in the door or had a realistic opportunity to prevent it. Therefore, Plaintiff has failed to prove a bystander liability claim against Defendant Singleton.

**H. DEFENDANT DOWNY IS NOT LIABLE UNDER A THEORY OF SUPERVISORY LIABILITY**

Furthermore, to the extent that Plaintiff intends to assert a supervisory liability theory against Sgt. Downy, Plaintiff's claim must fail. For supervisory liability, the following three elements are required:

(1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury.

*Abdel-Aziz v. Johns*, 2008 WL 4279696 at *3 (E.D.N.C. Sept. 15, 2008) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). "Because supervisors cannot be expected to promulgate rules and procedures covering every conceivable occurrence, and because they may be powerless to prevent deliberate unlawful acts by subordinates, the courts have appropriately required proof of multiple instances of misconduct before permitting supervisory liability to attach." *Randall*, 302 F.3d at 207 (internal quotations omitted).

In this case, all of Plaintiff's substantive claims fail for the above reasons. However, even considering supervisory liability on the merits, Plaintiff has failed to show multiple instances of misconduct by Officer Davis and Officer Singleton that would have put Defendant Downy on sufficient notice of a problem. Without such notice, Defendant Downy did not have the knowledge necessary for a supervisory liability claim. Furthermore, Defendant Downy was not present for the alleged (but denied) use of force against Plaintiff. Therefore, she could not have had actual knowledge of the incident and an opportunity to respond to it.

## I.   ALTERNATIVELY, DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Defendants should receive qualified immunity for Plaintiff's individual capacity

claims because Plaintiff has failed to show that Defendants intentionally violated any of his clearly established constitutional rights. The doctrine of qualified immunity protects government officials from actions for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985)). "[I]t is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526.

"The test for qualified immunity is a two-pronged inquiry. The court must determine, in no particular order, (1) whether a constitutional right has been violated on the facts alleged and (2) whether the right was clearly established at the time so that it would be clear to an objectively reasonable officer that his conduct violated that right." *Adams v. Parsons*, 2011 WL 1464856 at *4 (S.D. W.Va. April 15, 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 200–02 (2001)). Qualified immunity protects government officials from "bad guesses in gray areas" and ensures that they are only liable for crossing bright lines. *Maciarello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). As shown above, there were no violations of Plaintiff's statutory or constitutional rights. However, even if the Court were to find a violation of Plaintiff's constitutional rights, it was not clearly established at the time. Therefore, Defendants are entitled to qualified immunity.

28

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment should be

granted.

Respectfully submitted this the 17th day of May, 2024.

JOSHUA H. STEIN
Attorney General

<u>/s/ Alex R. Williams</u>
Alex R. Williams (N.C.S.B. No. 41679)
Special Deputy Attorney General
N.C. Department of Justice
Public Safety Section
P.O. Box 629
Raleigh, North Carolina 27699-9001
Telephone: 919-716-6528
Facsimile: 919-716-6761
awilliams@ncdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, and that I will cause the foregoing document to be served on all non-CM/ECF participant(s) by U.S. Mail, postage prepaid, addressed as follows:

> Jonathan James Newell
> OPUS No. 0788137
> Nash Correctional Institution
> PO Box 600
> Nashville, NC 27856
> *Pro Se Plaintiff*

This the 17th day of May, 2024.

/s/ Alex R. Williams
Alex R. Williams
Special Deputy Attorney General